Vicki BUTLER, et al., Plaintiffs,

v.

HOME DEPOT, INC., Defendant.

Teresa FRANK, Katherine Toma, and Kathleen York, et al., Plaintiffs,

v.

HOME DEPOT, INC., Defendant.

Nos. C–94–4335 SI, C–95–2182 SI.

United States District Court, N.D. California.

July 31, 1997.

James M. Finberg, Lieff Cabraser Heimann & Bernstein LLP, San Francisco, CA, M. Christine Carty, Lisa S. Smith, Schnader Harrison Segal & Lewis, Philadelphia, PA, Barry L. Goldstein, Saperstein Goldstein Demchak & Baller, Oakland, CA, William H. Brown, III, for Plaintiffs.

Fred T. Alvarez, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, Cynthia E. Gitt, Thomas P. Brown, IV, Epstein Becker & Green, Los Angeles, CA, Janet Morgan, Epstein Becker & Green, San Francisco, CA, Marian Exall, Atlanta, GA, for Defendants.

Norris J. Baller, David Borgen, Michelle Alexander, Saperstein Goldstein Demchak & Baller, Oakland, CA, for Plaintiffs Teresa Frank, Katherine Toma, Kathleen York.

## ORDER DENYING DEFENDANT'S *DAUBERT* MOTIONS TO EXCLUDE TESTIMONY BY DR. GENTILE, PROF. FISKE, PROF. BIELBY, AND DR. HOFFMAN

ILLSTON, District Judge.

On July 9, 1997, the Court heard argument on defendant's motions to exclude testimony by Dr. Gentile, Professor Fiske, Professor Bielby, and Dr. Hoffman pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Having considered the arguments of

counsel and the papers submitted, the Court hereby DENIES defendant's motions.

## BACKGROUND

This class action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the California Fair Employment and Housing Act, Government Code §§ 12940 *et seq.* (FEHA). Plaintiffs—female employees and applicants throughout Home Depot's West Coast Division—allege gender discrimination by Home Depot in job assignments, transfers, training, promotions, and compensation. Plaintiffs allege that discrimination has occurred in the form of intentional discrimination and neutral employment practices which disparately impact female employees.[1]

Home Depot has filed a motion to exclude the testimony of four of plaintiffs' expert witnesses at trial, pursuant to the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). At issue in this motion is the testimony of the following witnesses:

(1) Dr. Mary Gentile, plaintiffs' designated expert in the fields of organizational diversity program design and implementation, who is prepared to testify as to how corporations can look for and correct diversity problems within their workforces and the extent to which Home Depot has failed to take such steps in implementing its diversity initiative;

(2) Professor Susan Fiske, plaintiffs' designated expert in the fields of social psychology, social relations, and stereotyping, who is prepared to testify as to the role of gender stereotyping in Home Depot's hiring, placement, and promotion patterns and the organizational means by which gender stereotyping may be controlled;

(3) Dr. William Bielby, plaintiffs' designated expert in the fields of sociology, social psychology, and organizational behavior, who is prepared to testify as to the following alleged features of Home Depot's personnel system—(a) a

male-dominated culture that defines separate and unequal roles for women and men, (b) arbitrary and subjective criteria for hiring, assignment, training, assessment of qualifications, and promotion which give free play to the influence of gender stereotypes and biases held by predominantly male management teams, and (c) management's failure to utilize factors that could control the effects of stereotyping and biased decision-making; and

(4) Dr. Carl Hoffman, plaintiffs' designated expert in statistics, survey research, and job interests, who is prepared to testify as to the proper means of assessing the job interests of Home Depot's female applicants and employees, the inadequacies of the informal methods used by Home Depot, and the adverse impact that Home Depot's weightlifting requirement may have on women.

Home Depot argues that the testimony of these witnesses is unreliable as a matter of science and irrelevant to the issues at hand.

## LEGAL STANDARD

■■■ Federal Rule of Evidence 702 provides that:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702. The trial court maintains a "gatekeeping responsibility" to determine, as a preliminary matter, whether expert scientific testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469 (1993) *("Daubert I")*. Specifically, the trial judge must determine whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology can be applied to the facts in issue. *Id.* at 592–93, 113 S.Ct. at 2796–97. Among the

---

1. A more complete description of the factual and procedural background is included in this Court's January 24, 1996 Order Certifying Class Action.

factors which a court may consider are (1) whether the expert's theory or technique can be and has been empirically tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) whether the known or potential rate of error is acceptable, and (4) whether the theory or technique is generally accepted by the scientific community. *Id.* at 593–94, 113 S.Ct. at 2797. These factors are illustrative, rather than exhaustive, and need not be applied in every case. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1316–1317 (9th Cir.) (*"Daubert II"*), cert. denied, —— U.S. ——, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995).

■ Ultimately, the proponent of the expert testimony bears the burden of establishing the testimony's admissibility by a preponderance of the evidence. *Lust v. Merrell Dow Pharmaceuticals, Inc.,* 89 F.3d 594, 598 (9th Cir.1996). In making its preliminary evaluation of expert testimony, the trial court has broad discretion and will be reversed only for an abuse of discretion. *Daubert II,* 43 F.3d at 1315.

## DISCUSSION

### 1. Dr. Mary Gentile

Plaintiffs offer the testimony of Dr. Gentile to show that at the time this suit was filed, the diversity management programs at Home Depot lacked features that would make a significant and consistent impact on the organization and failed to accomplish Home Depot's own stated goals on its own stated timetable. Home Depot seeks to exclude this testimony on the grounds that: (1) Dr. Gentile is not an expert in diversity management, (2) her conclusions are not based upon a reliable, scientific methodology, and (3) her opinions are irrelevant or otherwise subject to exclusion under Federal Rule of Evidence 403.

■ As a preliminary matter, the Court must determine whether Dr. Gentile is qualified as an expert. *See* Fed.R.Evid. 104(a) ("Preliminary questions concerning the qualifications of a person to be a witness ... shall be determined by the court, subject to the provisions of subdivision (b)."). Home Depot challenges the educational credentials, research background, and practical experience of Dr. Gentile, arguing that she is not qualified to testify as an expert in the area of diversity management. In support of its motion, Home Depot notes that Dr. Gentile received a doctorate in Film and Literature, not diversity management, that Dr. Gentile's research has been limited to interviewing company executives in the course of developing diversity teaching case studies, and that Dr. Gentile has provided consulting services to only three businesses.

However, Dr. Gentile has been employed by Harvard Business School as a researcher, administrator, and lecturer. Gentile Report at ¶ 2. She has researched and written numerous case studies based on diversity-related challenges in business organizations and has taught a Harvard Business School course on "Differences That Work: Managerial Effectiveness Through Diversity." *Id.* In addition, she has authored two textbooks,[2] and her research has served as the foundation for an award-winning interactive, multi-media CD–ROM, "Managing Across Difference", which has served as a corporate training tool. *Id.* at ¶ 3. Moreover, Dr. Gentile has served as an independent consultant and author on the subject of diversity in the workplace for clients including Harvard University, Bentley College, Simmons Graduate School of Management, Pfizer, Inc., Morgan Stanley, Politzer & Haney, Arthur Andersen LLP, and Babson College. *Id.* at ¶ 5. Based on its review of the materials submitted, the Court finds that Dr. Gentile is qualified to testify as an expert in diversity management.

■ Home Depot next argues that Dr. Gentile's conclusions are not based upon a reliable, scientific methodology. Home Depot stresses that Dr. Gentile has not read all of the depositions in this matter, that she has relied upon plaintiffs' counsel, a non-neutral source, to provide her with "relevant" materials, and that she has not cited empirical studies establishing a direct causal connection between the diversity measures discussed in her report and the increased hiring and/or promotion of women. Home Depot

---

**2.** The textbooks are entitled "Managerial Excellence Through Diversity: Text and Cases" and "Managing Diversity: Making Differences Work".

concludes that Dr. Gentile's testimony must be excluded under *Daubert I.*

In response, plaintiffs argue that Dr. Gentile's testimony is admissible as specialized knowledge that will assist the trier of fact in its disparate treatment analysis. Plaintiffs assert that there is a substantial and growing body of research, case studies, and social science literature relating to the field of diversity management. Plaintiffs conclude that defendant's critique of Dr. Gentile's testimony goes to the weight, not the admissibility, of her testimony.

The Court agrees that Dr. Gentile's testimony concerning diversity management qualifies as specialized knowledge under Rule 702. Rule 702 provides a broad spectrum of expert qualifications. *Thomas v. Newton Intern. Enterprises,* 42 F.3d 1266, 1269 (9th Cir.1994); Fed.R.Evid. 702 advisory committee's note ("The fields of knowledge which may be drawn upon are not limited merely to the 'scientific' and 'technical' but extend to all 'specialized' knowledge."). In her report, Dr. Gentile states that field case studies and qualitative research on diversity management exist in abundance. Gentile Report at ¶ 12. In addition, plaintiffs' and defendants' experts alike cite to the burgeoning research in the area of diversity management. *See* Bielby Depo. at 474–75; Fiske Depo. at 70; Samuel A. Culbert, *Mind–Set Management: The Heart of Leadership* 3–4 (1996) ("Each of the new models has been field-tested. Most are conceptually credible and the result of common sense and imaginative practice blending with theory."). Dr. Gentile's testimony meets the requirements for "specialized knowledge." [3]

The criticisms of Dr. Gentile's proposed testimony in this matter are arguments more appropriately directed at the weight, rather than the admissibility, of this expert. The Supreme Court emphasized in *Daubert* that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596, 113 S.Ct. at 2798. This Court is satisfied that the foundation of Dr. Gentile's testimony— i.e., her research on and knowledge of diversity management techniques—meets the standards of Rule 702.

■ Finally, Home Depot seek to exclude Dr. Gentile's testimony concerning Home Depot's diversity initiative on the ground that her opinions are irrelevant to the issues in this case and otherwise subject to exclusion under Rule 403. Home Depot asserts that Dr. Gentile's evaluation of Home Depot's diversity efforts is irrelevant to the issue of whether Home Depot has discriminated against plaintiffs on the basis of gender. In particular, Home Depot asserts that it will not introduce evidence of its diversity initiative as a "shield" at trial and that evidence of its diversity measures is therefore irrelevant to both plaintiffs' case-in-chief and rebuttal case.

In an earlier order, this Court held that evidence of an employer's violation of its own affirmative action plan may be relevant to the issue of discriminatory intent. Order Re: Motions Concerning Certain Evidentiary Issues During Phase I Trial, filed April 24, 1997. While a defendant's failure to follow its own affirmative action plan is not a per se violation of Title VII, a defendant's non-compliance with its affirmative action plan may evidence awareness on its part of gender or racial disparities in the workforce or a hostile attitude toward the intended beneficiaries of its program. *See Gonzales v. Police Dept., City of San Jose, Cal.,* 901 F.2d 758, 761 (9th Cir.1990).

In the instant case, Dr. Gentile seeks to testify that Home Depot's diversity initiative (1) lacked six features that would make a

---

**3.** Home Depot argues that *Daubert I* applies to all types of expert testimony, including scientific, technical, and specialized knowledge. The Supreme Court in *Daubert* limited its discussion to scientific opinion. *Daubert I,* 509 U.S. at 590 n. 8, 113 S.Ct. at 2795 n. 8 ("Our discussion is limited to the scientific context because that is the nature of the expertise offered here."). *See also Thomas,* 42 F.3d at 1270 n. 3 (9th Cir.1994) ("*Daubert* was clearly confined to the evaluation of *scientific* expert testimony. Special concerns arise when evaluating the proffer of scientific testimony that do not arise when evaluating the type of expert testimony offered here [i.e., testimony as to the working conditions of experienced longshore personnel, based on an expert's 20 years of longshore experience].") (emphasis in original; citation omitted).

significant and consistent impact on the gender diversity of its organization[4] and (2) failed to accomplish its own stated goals on its own stated timetable. Gentile Report at ¶ 17. To the extent that Dr. Gentile's testimony relates to Home Depot's intent to discriminate, her testimony is relevant. For instance, Dr. Gentile's testimony regarding the six features required for an effective diversity initiative would appear to be relevant if plaintiffs first demonstrated that Home Depot had awareness of the "essential" quality of these features yet failed to incorporate the features into its diversity initiative.[5] Home Depot's knowledge of and refusal to implement these features could be indicative of a discriminatory attitude on its part toward the intended recipients of its diversity initiative.[6]

In addition, to the extent that Home Depot failed to accomplish its own stated goals, such evidence would appear to be probative of its attitude toward the intended beneficiaries of its diversity initiative. *See, e.g. Craik v. Minnesota State University Bd.,* 731 F.2d 465, 472 (8th Cir.1984) ("The defendants often did not abide by the plan. They did not set goals and timetables for promotion through the academic ranks, or for chair positions. Nor did they set timetables for appointing women to administrative positions.").

For present purposes, the Court declines to categorically exclude Dr. Gentile's testimony. The issues raised by Home Depot's motion relate not so much to the admissibility of Dr. Gentile's testimony under *Daubert* and Rule 702; instead, the issues raised by Home Depot are "relevance" concerns more appropriately addressed by the Court immediately preceding trial or during trial where the Court may view the proffered testimony in context. On several prior occasions, this Court has indicated its reluctance to decide issues in the abstract without knowing the specific purposes for which evidence is sought to be admitted. In sum, the Court reaffirms its earlier holding that it will not categorically exclude evidence related to Home Depot's Diversity Initiative. Defendant's motion to exclude testimony by Dr. Gentile at trial is therefore DENIED.

**2. Professor Susan Fiske**

Plaintiffs offer the testimony of Professor Fiske, an expert in the fields of social psychology and stereotyping, to establish: (1) that gender stereotyping plays a major role in Home Depot's hiring, placement, and promotion patterns, (2) that much of this stereotyping is automatic and not fully conscious at the individual level, (3) that stereotyping is nevertheless convenient for individual decision-makers, so they do not examine it, (4) that organizations can control these effects of stereotyping through proper information and motivation, and (5) that Home Depot has not taken adequate steps to control these biased individual practices. Fiske Report at 2. Home Depot seeks to exclude this testimony on the grounds that Professor Fiske's opinion is not based upon a reliable methodology, her conclusions are unsupported by a body of scientific research, and her opinions are irrelevant or otherwise subject to exclusion under Federal Rule of Evidence 403.

Professor Fiske is clearly qualified as an expert in the fields of social psychology, social relations, and stereotyping. She is currently a professor in the Psychology Department at the University of Massachusetts, Amherst, and is a former president of the Society for Personality and Social Psycholo-

4. These features include clear goals and direction, strong leadership and clear communication from the senior management team, a coherent and comprehensive implementation plan, a sense of organizational urgency and commitment, a firm timetable, and adequate measures of effectiveness or managerial accountability. Gentile Report at ¶ 9. Dr. Gentile concludes that these features are essential based on her research and experience in the field of diversity management. *Id.*

5. Dr. Gentile states in her report that the manager most directly responsible for the implementa-

tion of the Diversity Initiative has been aware of many of the required components of an effective diversity initiative but that movement toward such a program has continued to be slow in many areas and non-existent in others. Gentile Report at ¶ 9.

6. Home Depot could rebut such a contention by arguing that it had in fact incorporated these features into its diversity initiative or that it had declined to adopt these features for reasons unrelated to any discriminatory animus on its part towards women.

gy. Fiske Report at 2. She has written over 49 journal articles and 35 book chapters and has co-authored a graduate text entitled *Social Cognition,* which is viewed as defining the subfield of how people think about and make sense of other people. *Id.* In addition, her work has been performed primarily within the academic context, and she has served only on several occasions as an expert witness in litigation. *See Daubert II,* 43 F.3d at 1317 ("in determining whether proposed expert testimony amounts to good science, we may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office.").[7]

Furthermore, the subject matter of Professor Fiske's testimony is clearly "scientific knowledge" within the meaning of Rule 702 and *Daubert I. See People Who Care v. Rockford Bd. of Educ.,* 111 F.3d 528, 534 (7th Cir.1997) ("the guidelines for the admissibility of expert testimony that the Supreme Court laid down in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), apply to the testimony of social scientists as well as to that of natural scientists."). In particular, the theories underlying Professor Fiske's testimony have been tested in the laboratory and in the field. Fiske Report at 4. In addition, these theories have been subjected to peer review and have been published in reputable scientific journals. *Id.* Plaintiffs have furthermore presented evidence that the theories in question have been generally accepted by experts in the field of psycholo-

gy.[8] In sum, the Court concludes that the scientific basis for Professor Fiske's expertise is well-established. Home Depot concedes as much, arguing that the issue is not so much the reliability of social psychological theories generally; rather, the issue is Professor Fiske's methodology in arriving at the "facts" to which she applies her theories.

■ Home Depot critiques Professor Fiske's findings on the grounds that she has prejudged this matter without reviewing all of the relevant facts and deposition testimony and that she has resolved material facts underlying her opinion in favor of the plaintiffs, despite her lack of expertise to make such credibility determinations.[9] In addition, Home Depot asserts that Professor Fiske has not conducted an empirical study in this matter, that she draws unwarranted conclusions from the studies cited in her report, and that several of her conclusions are not reflective of a consensus among social psychologists.

The Court views the objections raised by Home Depot as issues of weight, rather than the admissibility of Professor Fiske's testimony. The questions raised by Home Depot are appropriate matters for cross-examination of this expert.[10] To the extent that Home Depot challenges Dr. Fiske's conclusions based on her use of non-representative sampling techniques, Home Depot's argument is misplaced. Professor Fiske does not contend that her examples are representative of the experiences of all applicants, employ-

---

**7.** In one case in which Professor Fiske testified, the court noted that Dr. Fiske's credentials in the field of stereotyping were "impressive". *Robinson v. Jacksonville Shipyards, Inc.,* 760 F.Supp. 1486, 1502 (M.D.Fla.1991).

**8.** For instance, the American Psychological Association has stated that "[t]he five decades of research on sex stereotyping is generally accepted within the scientific community as judged by commonly acknowledged criteria." *In the Supreme Court of the United States: Price Waterhouse v. Ann B. Hopkins, Amicus Curiae Brief for the American Psychological Association,* 46 Am.Psychol. 1061, 1062 (1991) (Selbin Decl., Ex. G).

**9.** In its criticism of Professor Fiske's methodology, counsel for Home Depot exceeds the bounds of zealous advocacy. *See,* e.g., Def.'s Mot. to Exclude Fiske Testimony at 10: "[T]he union of plaintiffs' counsel and Fiske as co-authors of the

report suggests that it is more akin to the product of a bordello than a research laboratory." The Court reminds counsel that attorneys practicing before this Court are expected to treat opposing counsel and its witnesses with civility, courtesy, and respect. Civ.L.R. 11–3.

**10.** For instance, Home Depot objects to Professor Fiske's opinion that objective criteria may better address the effects of gender-stereotyping than subjective criteria. Home Depot contends that there is no scientific consensus on this subject. Plaintiffs refute this contention. The Court finds that this is a matter best resolved through the adversary procedures of trial. *See Daubert II,* 43 F.3d at 1318 n. 11 ("Of course, the fact that one party's experts use a methodology accepted by only a minority of scientists would be a proper basis for impeachment at trial.").

ees, and managers of Home Depot. Fiske Depo. at 248 ("I am not saying that this is a random sample. It wasn't intended to be a random sample."). Instead, she uses these examples as illustrations of her stereotyping model. *Id.* at 207 ("these kinds of comments are anecdotes—that is illustrations—drawn from the particular context . . . which would illustrate the kinds of phenomena . . . that are very solidly established in the stereotyping literature and which fit expectations that I might have based on the stereotyping literature."). Moreover, plaintiffs note that a number of the depositions reviewed and cited by Fiske were the Rule 30(b)(6) deposition of Home Depot managers. Fiske Depo. at 245–46. In sum, the Court declines to categorically exclude Professor Fiske's testimony under Rule 702.

■ Home Depot also challenges the relevance of Fiske's testimony, arguing that her testimony is irrelevant to the issues of disparate treatment and disparate impact in this case.[11] First, Home Depot contends that Fiske's testimony on the subconscious processes of gender stereotyping has no bearing on the issue of whether Home Depot intentionally discriminated against plaintiffs. Second, Home Depot argues that her testimony does not address a specific employment practice that disparately impacts women. Third, Home Depot asserts that Fiske's testimony regarding measures which are necessary to reduce the effects of stereotyping is inadmissible affirmative action evidence.

As regards the relevance of Fiske's testimony on stereotyping to plaintiffs' disparate treatment claim, the Supreme Court has held that evidence of stereotyped remarks can "certainly" be evidence that gender played a part in an adverse employment decision. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 251, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989). In particular,

> we are beyond the day when an employer could evaluate employees by assuming or

insisting that they matched the stereotype associated with their group, for "[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes."

*Id.* To the extent that Professor Fiske testifies as to the causes, manifestations, and consequences of gender stereotyping as well as the organizational circumstances which allow such stereotypes to flourish, her testimony would appear to be relevant and of assistance to the jury. *See* Pls.' Opp'n at 10. Of particular relevance would be testimony related to Home Depot's awareness of such stereotyping and of the effect of such stereotyping on its decision-making processes. *See id.* at 15.

In addition, Fiske's testimony would appear to be relevant to plaintiffs' claim that Home Depot's ambiguous and subjective decision-making processes have had a disparate impact on female applicants and employees of Home Depot. *See Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 989–91, 108 S.Ct. 2777, 2786–87, 101 L.Ed.2d 827 (1988); *Stender,* 803 F.Supp. at 335 ("Where the system of promotion is pervaded by a lack of uniform criteria, criteria that are subjective as well as variable, discretionary placements and promotions, the failure to follow set procedures and the absence of written policies or justifications for promotional decisions, the court is not required to 'pinpoint particular aspects of [the system]' that are unfavorable to women.") (citation omitted); 42 U.S.C. § 2000e–2(k)(1)(B)(i).[12]

Finally, Dr. Fiske's testimony regarding Home Depot's failure to implement specific corrective steps may be relevant if plaintiffs can show that Home Depot was aware of and refused to take the corrective steps identified by Dr. Fiske. *See supra.* The Court need not determine at this juncture the admissibil-

---

**11.** The Court considers the relevance of Professor Fiske's testimony under both Rule 401 and Rule 702. *See Daubert II,* 43 F.3d at 1315.

**12.** The Civil Rights Act of 1991 amended Title VII to provide that:

> the complaining party shall demonstrate that each particular challenged employment prac-

tice causes a disparate impact, except that if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice.

42 U.S.C. § 2000e–2(k)(1)(B)(i).

ity of this portion of Dr. Fiske's proposed testimony. The issues raised by Home Depot are more appropriately addressed closer to trial. In sum, defendant's motion to exclude testimony by Professor Fiske under *Daubert* is DENIED.

### 3. Professor William Bielby

Plaintiffs have designated Professor Bielby as an expert in the fields of sociology, social psychology, and organizational behavior, who will testify as to how Home Depot's arbitrary, subjective, ambiguous and unvalidated employment practices can lead to discrimination against women and the specific barriers to the advancement of women at Home Depot. Home Depot seeks to exclude this testimony on the grounds that Professor Bielby's proposed testimony is not based upon a reliable methodology, his conclusions are not grounded in any scientific basis, and his opinions are irrelevant or otherwise subject to exclusion under Federal Rule of Evidence 403.

Professor Bielby's *curriculum vitae* indicates that he is well-qualified as an expert in the fields of sociology, social psychology, and organizational behavior. He is currently a Professor and Chair of the Department of Sociology at the University of California at Santa Barbara and has taught graduate and undergraduate courses on organizational structure and practice, labor markets, and quantitative methods. Bielby Report at ¶ 1. Over the past fifteen years, much of his research has focused on the issue of gender and workplace discrimination and on organizational policies and practices more generally. *Id.*

The subject matter of Professor Bielby's testimony also qualifies as "scientific knowledge" within the meaning of Rule 702 and *Daubert I*. Professor Bielby's testimony on the interplay of gender stereotyping and subjective factors relies on theories that have been tested in laboratory and field studies. Fiske Report at 4. In addition, the theories underlying Professor Bielby's testimony have been subjected to peer review, have been published in reputable scientific journals, and are generally accepted by experts in the field. Bielby Depo. at 474–75; Bielby Report at ¶ 5 ("The analyses of gender segregation and organizational personnel policies and

practices that I have done for this case are similar to many studies I have conducted in my scientific research, published in the articles, chapters, and reports listed on my *curriculum vitae.*"). Furthermore, Professor Bielby has been permitted to testify in other cases raising similar issues. *See, e.g., Stender,* 803 F.Supp. at 301–03.

 Home Depot challenges the reliability of plaintiffs' expert, asserting that Professor Bielby draws sweeping conclusions based on his selected review of deposition testimony. In addition, Home Depot argues that Professor Bielby's testimony is unreliable because he has not reviewed applicant flow data, examined specific personnel decisions, or controlled for other factors which might explain any gender disparity. The Court rejects Home Depot's attempt to exclude categorically Professor Bielby's testimony on the basis of these "methodological" flaws. Like Professor Fiske, Professor Bielby does not contend that he has conducted a systematic survey of female applicants' or employees' career interests based on a random sample; instead, he proffers his conclusions based on a limited set of information. Hoffman Depo. at 78. To the extent that Professor Bielby offers conclusions which lack foundation, Home Depot may attack such statements through vigorous cross-examination, presentation of contrary evidence, and requests for limiting instructions. At this juncture, however, the Court declines to exclude this evidence.

Home Depot also challenges the relevance of Professor Bielby's testimony to the issues in this case. Expert testimony regarding the interplay of gender stereotyping and subjective employment practices, in addition to the effect of such stereotyping on the gender composition of the workforce, would appear to be relevant to plaintiffs' disparate treatment and disparate impact claims. In addition, Professor Bielby's testimony regarding specific steps Home Depot might have taken is an issue to be considered with the other evidence in context. In sum, Home Depot's motion to exclude categorically testimony by Professor Bielby is DENIED.

**1266**

#### 4. Dr. Carl Hoffman

 Plaintiffs proffer the testimony of Dr. Hoffman, an expert in statistics, survey research, and job interests, on two topics: (1) the proper means of assessing the job interests of Home Depot's women applicants and employees and (2) the impact that an unvalidated weightlifting requirement may have on employment opportunities for women. Home Depot objects to this testimony on the grounds that Dr. Hoffman's opinions are not based upon a reliable research methodology and are irrelevant to the issues in this proceeding.

Dr. Hoffman is President and Director of Hoffman Research Associates, Inc., a social research firm specializing in consulting in human resource research and development. Hoffman Report at 1. He holds a Ph.D in Sociology from the University of North Carolina at Chapel Hill, where he teaches seminars in survey research and applied statistical analysis. *Id.* at 1. Over the past seventeen years, he has performed numerous employment surveys to assess the relative interest of men and women in seeking advancement at their places of employment. *Id.* at 2. In addition, he has testified in the areas of design, administration and analysis of employee job interest surveys in other cases. *See, e.g., Stender,* 803 F.Supp. at 314–18. Dr. Hoffman is clearly qualified to testify as an expert possessing specialized knowledge with respect to employee job interests and mechanisms for determining such interests.

Notwithstanding Dr. Hoffman's expertise, Home Depot argues that his testimony is not relevant to the issues in this case.[13] In his report, Dr. Hoffman indicates that it is a relatively difficult process to determine the general level of interest of women for specific positions at Home Depot, absent a scientifically designed and rigorously executed survey of Home Depot's employees and applicants. Home Depot asserts that it will not present testimony that Home Depot managers can assess the *general* job interests of employees and applicants; instead, it will argue that individual store managers are ad-equately informed of the interests of *individual employees within their stores* in particular jobs or categories of jobs.

Dr. Hoffman's opinions are not limited solely to the job interests of general categories of employees. For instance, Dr. Hoffman states:

> It is difficult for a manager to keep up with changes, and to have the knowledge of these changes of an employee's circumstances coincide with the presentation of opportunities within the workplace.... Even with periodic discussion with an immediate supervisor, it is difficult for a hiring supervisor in another department to know the developmental game plan for individuals not yet in his department, but who are seeking entrance to it, especially at the time an opening occurs.

Hoffman Report at 7. Moreover, Dr. Hoffman indicates that subtle steering by employers and limited information available to employees and applicants limit the reliability of information listed on initial employment applications. *Id.* at 6–7. Dr. Hoffman's testimony is clearly relevant to the issue of whether Home Depot managers are able to gauge accurately the career interests of individual employees. As such, Home Depot's motion to exclude Dr. Hoffman's testimony on this topic is DENIED.

Home Depot also seeks to preclude Dr. Hoffman from testifying as to the impact of Home Depot's 95 pound weightlifting requirement for merchandising jobs. Home Depot argues that Dr. Hoffman's analysis is ill-formed, given his failure to analyze applicant flow data and his reliance on general labor market statistics. Home Depot's concerns may be valid; however, its objections are more appropriately directed at the weight, not the admissibility of Dr. Hoffman's testimony. As such, the Court DENIES Home Depot's motion to exclude Dr. Hoffman from testifying.

**13.** In addition to its relevance argument, Home Depot again argues that plaintiffs' expert relies on an incomplete and biased review of depositions in this matter and that this expert's testimony is therefore unreliable. For the reasons stated earlier, the Court rejects this argument as a basis for categorically excluding Dr. Hoffman's testimony.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Home Depot's motion to exclude categorically the testimony of Dr. Gentile, Professor Fiske, Professor Bielby, and Dr. Hoffman.

IT IS SO ORDERED.